**EXHIBIT B**

## SETTLEMENT AND FORBEARANCE AGREEMENT

This Settlement and Forbearance Agreement ("Agreement") is made effective the 15th day of April, 2016, between Health Assurance, LLC, ("Health Assurance") and Independent Health Services, Inc., d/b/a IHS Pharmacy ("IHS Pharmacy").

## RECITALS

WHEREAS, Health Assurance, LLC. is a Mississippi business corporation having its principal place of business in Jackson, Mississippi and engages in the business of providing comprehensive health care services and products to residents and occupants of private and public facilities, and

WHEREAS, Health Assurance entered into four contracts with the Mississippi Department of Corrections to provide healthcare services to (i) East Mississippi Correctional Facility, (ii) Marshall County Correctional Facility, (iii) Walnut Grove Correctional Facility and (iv) Wilkinson County Correctional Facility ("MDOC Contracts"); and

WHEREAS, pursuant to the terms of the MDOC Contracts, Health Assurance was obligated to provide pharmaceuticals and was required to pay for the cost of pharmaceuticals up to a certain annual dollar amount with respect to each Facility; provided, however, that Health Assurance was not responsible for payment of costs of medication or treatment of inmates diagnosed with Human Immunodeficiency Virus ("HIV") or Acquired Immune Deficiency Syndrome ("AIDS") or Hepatitis C Virus ("HCV") as defined by the National Center for Disease Control Center (hereinafter, HIV, AIDS and HCV pharmaceuticals are referred to as "Excluded Medications and all other pharmaceuticals are referred to and "Included Medications"); and

WHEREAS, with respect to the (i) East Mississippi Correctional Facility, MDOC was responsible for payment of Included Medications to the extent the cost of same exceeded $1,900,000.00 annually; (ii) Walnut Grove Correctional Facility, MDOC was responsible for payment of Included Medications to the extent the cost of same exceeded $180,000.00 annually; (iii) Marshall County Correctional Facility, MDOC was responsible for payment of Included Medications to the extent the cost of same exceeded $180,000.00 annually; and (iv) Wilkinson County Correctional Facility, MDOC was responsible for payment of Included Medications to the extent the cost of same exceeded $240,000.00 annually (hereinafter, the cost of pharmaceuticals in excess of the annual amount is referred to as "Excess Medications"); and

WHEREAS, Health Assurance purchased the Included Medications, the Excluded Medications and the Excess Medications from IHS Pharmacy on a open account basis; and

WHEREAS, as of the Effective Date, IHS Pharmacy is owed the principal amount of $1,688,358.39; and

WHEREAS, IHS Pharmacy is a direct intended third party beneficiary of the MDOC Contracts with respect to the Excluded Medications and the Excess Medications, and

WHEREAS, MDOC has failed and refused to pay Health Assurance sums due Health Assurance under the MDOC Contracts; and

WHEREAS, MDOC has failed and refused to pay IHS Pharmacy for Excluded Medications and Excess Medications; and

WHEREAS, Health Assurance has failed to pay IHS Pharmacy for Included Medications; and

WHEREAS, Health Assurance, has requested IHS Pharmacy to make certain financial accommodations to Health Assurance, and to consent to the transactions contemplated by this Agreement; and

WHEREAS, the Parties desire to evidence their understandings and agreements with respect to the manner in which such financial accommodations will be extended, administered and collected;

NOW THEREFORE, the Parties, for good and valuable consideration and the mutual promises and obligations set forth in this Agreement, the sufficiency and receipt of which is acknowledged by all of the Parties, hereby agree as follows:

1. **Definitions**. In addition to any terms expressly defined herein, the following defined terms shall apply, provided, however, that all defined terms in all Loan Documents shall have the meaning ascribed to them therein, unless expressly otherwise defined herein:

   a. "Promissory Note" means the promissory note to be executed in favor of IHS Pharmacy as provided for in paragraph 4 of this Agreement.

   b. "Loan Documents" means any and all documents executed by Health Assurance, IHS Pharmacy in connection with the Indebtedness and this Agreement.

   d. "Effective Date" means April 15, 2016 at 12:00:01 a. m.

   e. "Indebtedness" means the indebtedness of Health Assurance, LLC to IHS Pharmacy evidenced by the Promissory Note.

   f. "Obligations" means the promises, covenants and undertakings of Health Assurance, LLC presently existing and as existing upon consummation of this Agreement.

   g. "Open Account" means the open account of debits and credits in connection with the sales of pharmaceuticals by IHS to HA.

   h. "Collateral" means the property upon which HA is granting IHS a security interest.

2

2. **Settlement and Compromise.** Subject to the provisions of this Agreement, the Parties agree that the liquidated principal balance due IHS Pharmacy on the Open Account is $1,688,358.39. Such amount is a settlement and compromise of the claims of IHS Pharmacy on the Open Account. In consideration of the settlement and compromise and the liquidation of the balance due, IHS Pharmacy hereby waives any claims for interest, late fees and attorneys' fees and expenses accruing and incurred prior to the Effective Date.

3. **Promissory Note.** Contemporaneously with the execution of this Agreement, Health Assurance, LLC shall execute a promissory note in a form acceptable to IHS Pharmacy for the full amount of principal amount of the Indebtedness, which amount is $1,688,358.39, bearing interest at the rate of 4.25% per annum and payable in a single installment on April 14, 2020, at which time all principal and interest shall be due and payable in full.

4. **Commercial Security Agreement.** Contemporaneously with the execution of this Agreement, Health Assurance shall execute a Commercial Security Agreement in a form acceptable to IHS Pharmacy granting IHS Pharmacy a security interest in all intangible personal property of Health Assurance including, but not limited to, all accounts, general intangibles, chattel paper, instruments, investment property, letter of credit rights, deposit accounts and promissory notes, together with all attachments, accessions, accessories, replacements, substitutions, additions and proceeds.

5. **Assignment of Claims.** Contemporaneously with the execution of this Agreement, Health Assurance shall execute an Assignment of Claims in a form acceptable to IHS Pharmacy collaterally assigning all claims of Health Assurance against MDOC.

6. **Reservation of MDOC Direct Claims.** Nothing contained in this Agreement is intended to and nothing in this Agreement shall be construed to constitute an election of remedies, waiver, release, novation, estoppel or otherwise alter, prejudice or modify claims held by or available to IHS Pharmacy directly against MDOC for payment of Excluded Medications and Excess Medications, all such rights being hereby expressly reserved by IHS Pharmacy, it being the intent that all remedies of IHS Pharmacy against any person, entity or governmental unit shall be cumulative and in addition to the claims of IHS Pharmacy against Health Assurance.

7. **Forbearance.** IHS Pharmacy agrees to forbear exercising any remedies available to it against Health Assurance under the Loan Documents until the occurrence of an event of Default under the Loan Documents.

8. **Indemnification.** Health Assurance, hereby agrees to absolutely and completely save, indemnify and hold IHS Pharmacy harmless from all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, (including, but not limited to attorneys fees and expenses and costs of court) whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, made or claimed against, and/or IHS Pharmacy and their

3

respective parent corporations, subsidiary corporations, affiliate corporations, officers, directors, agents, representatives, employees, attorneys, or contractors on account of, arising, or resulting from the business operations or otherwise of Health Assurance, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof on account of, arising, or resulting from the business operations or otherwise of Health Assurance, including, without limitation, any claims relating to work performed by Health Assurance, and any contract, lease or other agreement entered into by Health Assurance.

9. **Reporting Requirements**. Health Assurance shall provide to IHS Pharmacy within forty-five days of the end of each calendar year an officer certified true and accurate report of accounts receivable, accounts payable and profit and loss statement, statement of cash flows and balance sheet for the preceding calendar year.

10. **No Other Agreements**. Health Assurance acknowledges that there are no promises, agreements, undertakings, or commitments of any nature whatsoever that have been made by or on behalf of IHS Pharmacy with respect to the Loan Documents, except the agreements made by IHS Pharmacy contained in the Loan Documents and this Agreement. Health Assurance specifically agrees and acknowledges that IHS Pharmacy is under no obligation to make any further modifications to the Loan Documents.

11. **Governing Law**. This Agreement shall be construed in accordance with the laws of the State of Mississippi.

12. **Attorneys's Fees and Other Expenses**. Each Party shall be responsible for payment of all attorneys fees and expenses in connection with the negotiation and preparation of this Agreement.

13. **No Waiver of Future Defaults**. Health Assurance acknowledges and agrees that IHS Pharmacy is in no way waiving any future events of default, nor its rights to exercise certain remedies under the Loan Documents in case of such event of default.

14. **Financial Information**. Health Assurance shall deliver to IHS Pharmacy such financial information as IHS Pharmacy may reasonably request from time to time, including without limitation, quarterly and annual financial statements, updated statements of income and cash flows, and information pertaining to Health Assurance's financial condition. Such information shall be true, complete and accurate.

15. **Waiver of Notice**. To the maximum extent permitted by applicable law, Health Assurance waives all rights to notice they might have been entitled to receive in the past in connection with the Open Account.

16. **Release of IHS Pharmacy** Except for the obligations of IHS Pharmacy under this Agreement and the Loan Documents, in consideration of IHS Pharmacy entering into

4

his Agreement, and without any contingency, precondition, or condition subsequent, Health Assurance, for itself and any trustees, successors and assigns, hereby fully and forever releases, relinquishes, discharges, settles and compromises any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, which it has against IHS Pharmacy and to the fullest extent applicable, of its parent corporations, subsidiary corporations, affiliate corporations, officers, directors, insurers, trustees, agents, representatives, employees, attorneys, or contractors on account of, arising, or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof, including, without limitation, any claims relating to the Loan Documents, any act or event relating to IHS Pharmacy's (or its designees') possession or use of the collateral at any time, any act or event relating to the IHS Pharmacy's administration under the Loan Documents, this Agreement or any other transaction contemplated by this Agreement.

17. **Release of Health Assurance Members**    In consideration of Health Assurance entering into this Agreement, and without any contingency, precondition, or condition subsequent, IHS Pharmacy, for itself and any trustees, successors and assigns, hereby fully and forever releases, relinquishes, discharges, settles and compromises any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, which it has the members of Health Assurance, Carl Reddix and Michael Reddix, on account of, arising, or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof.

18. **Waiver of Marshaling.**    Health Assurance further acknowledges and agrees that Health Assurance has heretofore and does hereby waive any right for marshaling of any of the Collateral. Nothing herein shall constitute a requirement for marshaling of any of the Collateral or any Collateral hereafter subject to the lien and security interests under the Loan Documents.

19. **No Further Commitment or Course of Dealing**. Without limiting any provision contained in this Agreement, Health Assurance expressly acknowledges that (i) IHS Pharmacy has not made and is not making any commitment for, and that there is no understanding, explicit or implicit, relating to, or affecting, financing for any time beyond the maturity date of the Promissory Note, (ii) IHS Pharmacy has made no commitment with respect to, and there is no understanding, explicit or implicit, relating to or affecting the terms of any future modifications of the Promissory Note or other Loan Documents, and (iii) no course of dealing exists that would require IHS Pharmacy to extend the obligations set forth in this Agreement.

20. **Authority of Health Assurance, LLC**. Health Assurance represents and warrants to IHS Pharmacy that (i) it has the power and authority to execute, deliver and perform this Agreement and the Loan Documents and the same have been duly executed and delivered by it; (ii)

5

this Agreement and the other respective Loan Documents constitute valid and legally binding obligations of Health Assurance, enforceable in accordance with the respective terms stated therein; (iii) the execution, delivery and performance by Health Assurance of this Agreement and the Loan Documents will not and do not violate, conflict with, or constitute any default under any law (including laws relating to usury), government regulation, or any other agreement or instrument binding upon Health Assurance; and (iv) no approval, authorization or other action by, or filing with, any governmental official, board or authority is required in connection with the execution and delivery of this Agreement or any of the Loan Documents, and the performance of the provisions thereof, except such approvals and authorizations as have been received, such actions as have been taken, and such filings has have been made.

21. **Third Parties**.  This Agreement is made and entered into for the protection and benefit of the Parties hereto and their respective affiliates, successors and assigns. No person or entity not a party to this Agreement shall be a direct or indirect beneficiary or have any direct or indirect cause of action or claim in connection with this Agreement or any of the Loan Documents.

22. **Construction**.  Each Party acknowledges that it has participated in the negotiation of this Agreement and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party hereto by any court or governmental or judicial authority by reason of such Party having or being deemed to have structured, dictated or drafted such provision. All terms of this Agreement were negotiated at arms-length, and this Agreement was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

23. **Advice of Counsel**.  Health Assurance represents to IHS Pharmacy that it has discussed this Agreement and all documents related in any form or fashion to this Agreement with counsel, or have had the opportunity to discuss this Agreement and all documents related in any form or fashion to this Agreement with counsel and has elected not to do so, and that it fully understands the terms hereof, and that it has not relied upon any representation or statement of IHS Pharmacy or its trustee or agents in regards thereto. Health Assurance acknowledges and agrees that counsel for IHS Pharmacy represents IHS Pharmacy only, that such counsel has given advice to IHS Pharmacy only, that such counsel has not given any advice to or otherwise acted on behalf on any other Party to this Agreement, that the drafting and preparation of this Agreement and all documents necessary or desirable to consummate the transactions contemplated by this Agreement have been drafted solely as an accommodation and Health Assurance hereby waives and disclaims any and all claims they may have now or in the future against such counsel.

24. **Consent to Relief from Automatic Stay**.  Health Assurance agrees that, in consideration of the agreements of IHS Pharmacy contained herein, in the event that Health Assurance shall in the future (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition for relief under Title 11 of the United States Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the United States Code, as amended; (iii)

6

file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtor; (iv) has sought or consented or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against it for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy or insolvency, or relief for debtors, IHS Pharmacy shall thereupon be entitled to relief from any automatic stay imposed by section 362 of Title 11 of the United States Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to IHS Pharmacy as provided in the Loan Documents and as otherwise provided by law or in equity, and Health Assurance hereby waives the benefits of such automatic stay and consents and agrees to raise no objection to such relief.

25. **Severability**. If, from any circumstances whatsoever, fulfillment of any provision of this Agreement shall involve transcending the limit of validity presently prescribed by any applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity. Further, if any cause or provision herein contained operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

26. **Counterparts; Electronic Delivery**. To facilitate execution, this Agreement and any required consents may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each Party, or that the signature of all persons required to bind any Party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement or any required consent to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the Parties thereto. Any signature to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages. Delivery of an executed counterpart of this Agreement or any required consent by telefacsimile or any other form of electronic transmission shall be equally as effective as delivery of an original executed counterpart thereof. Any Party delivering an executed counterpart of this Agreement or any required consent by telefacsimile or other electronic means also shall deliver an original executed counterpart of such instrument, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect thereof.

27. **Complete Agreement**. The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement and the Loan Documents contain the entire and final agreement between the Parties with respect to the Loans and there are no agreements, understandings, warranties or representations among the Parties except as set forth herein. The terms

of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

28. **Survivability**. Each and every covenant, promise, representation, warranty, waiver, release and all other provisions, terms and conditions of this Agreement and the Loan Documents shall survive the maturity dates of the Promissory Note.

29. **Miscellaneous**. It is further agreed as follows:

(a) Time is of the essence of this Agreement and each provision of this Agreement.

(b) This Agreement will inure to the benefit of and bind the respective heirs, personal representatives, successors, and permitted assigns of the Parties hereto.

(c) The relationship between Health Assurance and IHS Pharmacy is that of debtor and creditor. Nothing contained in this Agreement will be deemed to create a partnership or joint venture between IHS Pharmacy and Health Assurance or any other party, or to cause IHS Pharmacy to be liable or responsible in any way for the actions, liabilities, debts, or obligations of Health Assurance or any other party.

(d) Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

(e) All of the Loan Documents are subject to the provisions of this Agreement, and in the event of a conflict or ambiguity between the provisions of this Agreement and the provisions of the Loan Documents, the provisions of this Agreement shall control.

30. **Consent of Jurisdiction and Waiver of Jury Trial.** HEALTH ASSURANCE, HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES HEREUNDER AND THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. HEALTH ASSURANCE AGREES THAT IHS PHARMACY MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT BETWEEN THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY, AND THAT ANY DISPUTE OR

CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY. HEALTH ASSURANCE HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF IHS PHARMACY, INCLUDING IHS PHARMACY COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT IHS PHARMACY WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, AND HEALTH ASSURANCE, LLC AND GUARANTORS ACKNOWLEDGE THAT IHS PHARMACY HAS, IN PART, BEEN INDUCED TO ENTER INTO THIS AGREEMENT IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.

IN WITNESS WHEREOF the Parties have executed this Agreement on the ___ day of _____, 2016, with the intention that this Agreement will be effective as of the date first above written.

HEALTH ASSURANCE, LLC

BY: _____
Michael Reddix, Manager and Member

BY: _____
Carl Reddix, Manager and Member

INDEPENDENT HEALTH SERVICES, INC.,
D/B/A IHS PHARMACY

BY: _____
Myra L. Sanderson, VP/GC

**ACKNOWLEDGMENTS**

STATE OF MISSISSIPPI
COUNTY OF Hinds

I, the undersigned Notary Public in and for said County, in said State, hereby certify that _____ whose name as Manager & Member of Health Assurance, LLC is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing, she, as such officer and with full authority executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal, this the 2nd day of June, 2016.

_____
NOTARY PUBLIC

9

STATE OF MISSISSIPPI
COUNTY OF Hinds

I, the undersigned Notary Public in and for said County, in said State, hereby certify that Michael Reddix whose name as Manager/Member Health Assurance, LLC is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing, she, as such officer and with full authority executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal, this the 3 day of June, 2016.

_____
NOTARY PUBLIC

My Commission Expires:

STATE OF ALABAMA
COUNTY OF DeKalb

I, the undersigned Notary Public in and for said County, in said State, hereby certify that Myra L. Senderson whose name as VP/GC of INDEPENDENT HEALTH SERVICES, INC., D/B/A IHS PHARMACY is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing, she, as such Trustee and with full authority executed the same voluntarily for and as the act of said Trust.

Given under my hand and official seal, this the 20 day of June, 2016.

_____
NOTARY PUBLIC

My Commission Expires:

**My Commission
Expires 10-27-19**

10